Peyton Lee, OSB No. 164224
Assistant Federal Public Defender
Email: peyton_lee@fd.org
101 SW Main Street, Suite 1700
Portland, OR  97204
Tel: (503) 326-2123
Attorney for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case Nos.: 3:25-po-00391-YY |
| | 3:25-po-00511-YY |
| Plaintiff, | |
| v. | DEFENDANT'S MOTION TO DISMISS |
| IAN MALCOLM I. ALEXANDER, | |
| Defendant. | |

Ian Malcolm I. Alexander, through his attorney Peyton E. Lee moves for dismissal of all charges against him. Pursuant to Federal Rule of Criminal Procedure 12(b)(1), a defendant "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." *See United States v. Plascencia-Orozco*, 852 F.3d 910, 920 (9th Cir. 2017). Mr. Alexander is cited with violations of Title 41, Code of Federal Regulations § 102-74.385, failing to comply with official signs and lawful directions.

First, the charges must be dismissed because the regulation giving rise to the charges was applied in violation of Mr. Alexander's First Amendment rights. Second, the charges must be dismissed because the regulation is unconstitutionally vague and thus is void.

## BACKGROUND

Mr. Alexander's violations pursuant to 41 C.F.R. § 102-74.85 arise from his protest activity at the ICE Facility. On June 17, 2025, Mr. Alexander was one of many protesters violently arrested by over 30 federal agents. Mr. Alexander was detained for several hours before receiving a citation for failing to comply with lawful directions of federal officers, namely for allegedly failing to leave the driveway of the ICE facility after purported warnings to leave. Mr. Alexander was arrested a second time on July 16, 2025. Mr. Alexander was detained after a targeted arrest, again for allegedly remaining on federal property after being asked to leave. In this instance, Mr. Alexander was the only protester arrested, despite engaging in the same activity as other protesters—the only difference being that leading up to his arrest, Mr. Alexander repeatedly requested the return of his phone that federal agents had seized and broken hours before.

## ARGUMENT

I.  **The regulation charged was applied in violation of Mr. Alexander's First Amendment rights and thus the citations must be dismissed.**

The First Amendment provides strong speech protections for citizens: the government "shall make no law… abridging the freedom of speech." U.S. Const. amend. I. Even when a person's First Amendment activity falls within the scope of a criminal offense, courts are still "required to assess the constitutional impact of its application." *Brown v. Louisiana*, 383 U.S. 131, 142 (1966). This assessment is important to ensure the law is not being "deliberately and purposefully applied solely to terminate the reasonable, orderly, and limited exercise of the right to protest," as such government action "is intolerable under our Constitution." *Id.* This matter

must be dismissed because the regulation charged was used by the government to stomp out Mr. Alexander's protected First Amendment activity.

For a court to determine "the extent to which the Government can control access" to property, it must first decide the "nature of the relevant forum." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985). The Court recognizes three types of forums, each carrying certain rights and protections: traditional public forums, designated public forums and nonpublic forums. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-46 (1983).

Although Mr. Alexander reserves the argument that the driveway adjacent to the public sidewalk is a traditional public forum, even if his protected First Amendment activity occurred on a nonpublic forum, the government's regulation of that speech still must be reasonable and here, it is not.

### A. The conduct underlying the offenses alleged is protected First Amendment activity.

Under the circumstances of Mr. Alexander's arrests, he was engaged in protected First Amendment activity such that the government's regulation of that activity is subject to scrutiny by the court. Protesting—through spoken words, written words, or filming—falls squarely under the protections of the First Amendment. *United States v. Grace*, 461 U.S. 171, 176 (1983) ("There is no doubt that as a general matter peaceful picketing and leafletting are expressive activities involving 'speech' protected by the First Amendment."); *Askins v. U.S. Dep't of Homeland Sec'y*, 899 F.3d 1035, 1044 (9th Cir. 2018) ("The First Amendment protects the right to photograph and record matters of public interest."). Moreover, political speech is the most

protected type of speech and is "entitled to robust protection under the First Amendment." *Citizens United v. FEC*, 558 U.S. 310, 480 (2010) (Thomas, J., concurring).

      **B.**      **If this is a nonpublic forum, the regulation of protected speech must be reasonable and here, the government's regulation of speech was unreasonable.**

Regardless of whether Mr. Alexander's protected speech occurred on a public or nonpublic forum, the government cannot justify its regulation of speech because, under the least exacting standard, the regulation of Mr. Alexander's speech was "arbitrary, capricious, or invidious." *Lehmen v. City of Shaker Heights*, 418 U.S. 298, 303 (1974) (plurality opinion). The government, unlike a private business, is not free from First Amendment constraints "even when acting in its propriety capacity." *United States v. Kokina*, 497 U.S. 720, 725, 727 (1990). It may only restrict otherwise protected speech if "the regulation of speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ. Ass'n*, 460 U.S. at 46; *see Lehman*, 418 U.S. at 303 (explaining that when governmental property is involved, "policies and practices governing access" to that property "must not be arbitrary, capricious, or invidious"). Although on its face the offense charged may be content-neutral, the government used this regulation to suppress Mr. Alexander's speech in arbitrary, capricious, and invidious ways, making this restriction of speech plainly unconstitutional.

     Mr. Alexander's first arrest occurred in the early days of the protests at the ICE Facility, and on the night of his arrest, the restriction on speech was unreasonable in that it was arbitrary and capricious. To demonstrate reasonableness, the government will surely argue that when it purportedly ordered Mr. Alexander to leave federal property, it restricted protected speech in a reasonable way because protesters in the driveway obstructed the normal use of the ICE Facility. *See Perry Educ. Ass'n*, 460 U.S. at 49 (explaining that reasonable restrictions on speech in

Page 4   Defendant's Motion to Dismiss

nonpublic forum must be viewed "in light of the purpose which the forum at issue serves"). This explanation is wholly unconvincing. First, the actual use of the driveway was not obstructed because no vehicles were actually kept from using it. Second, arrests made on this night were not made based on a uniform standard because some individuals were gently escorted off the property, rather than arrested and cited, despite engaging in the same conduct. For the government to legitimately claim its restrictions on protected First Amendment activity were reasonable, it must show that the restriction was uniformly applied. *See Minn. Voters All. V. Mansky*, 585 U.S. 1, 22 (2018) (explaining that "unfair or inconsistent enforcement" of speech restriction would undermine the reasonableness of that restriction). As the Court warned in *Minnesota Voters Alliance*, this unprecise regulation has permitted unreasonable application, and in this case unconstitutionally infringed Mr. Alexander's protected speech.

      With regard to Mr. Alexander's second arrest, the discovery provided by the government shows an egregious and invidious restriction on Mr. Alexander's protected speech. In the First Amendment context, "invidious" means "unjustly or offensively discriminatory." *Metro Display Advert., Inc. v. City of Victorville*, 143 F.3d 1191, 1194 (9th Cir. 1998). As such, the government "may not pick and choose" between similarly situated speakers and subjects. *Perry Educ. Ass'n*, 460 U.S. at 55. It may only "draw distinctions which relate to the special purpose for which the property is used." *Id.* To demonstrate, in *Perry Educational Ass'n*, the Court determined it was reasonable to provide "differential access" in a nonpublic forum to certain speakers when this differential access aligned with the intended purpose of the property. *Id.* at 49-52. By contrast, here, the restriction on speech was not related to the intended purpose of the property and instead was applied discriminatorily against Mr. Alexander to suppress the content of his speech. This is evident because in the eight-minute video provided by the government, Mr. Alexander is

Page 5  Defendant's Motion to Dismiss

purposefully selected and arrested from a group of at least seven other protesters in the exact same area who would have received the exact same order to leave. Importantly, just before his arrest, Mr. Alexander is seen walking along the end of the driveway, expressing his frustration that the government had seized his cell phone and repeatedly requested its return until over 20 federal officers appeared and conducted his targeted arrest. Given Mr. Alexander's physical position was identical to those around him, and it would not have been possible for Mr. Alexander to receive an order to leave that the others did not, it is clear that the government unconstitutionally restricted Mr. Alexander's speech in order to restrain the content of his speech. *Metro Display Avert.*, 143 F.3d at 1195.

II.  **The regulation charged is void because it is unconstitutionally vague.**

Any criminal offense must be defined with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). There are two principles underlying this doctrine. First, the principle of fair notice—citizens must be informed which conduct is prohibited. *See Smith v. Goguen*, 415 U.S. 566, 574 (1974). Second, criminal offenses must "establish minimal guidelines to govern law enforcement," to keep "policemen, prosecutors, and juries [from pursuing] their personal predilections." *Id.* Important here, where the scope of an offense, as written, "is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts." *Id.* at 573.

The regulation charged here is unconstitutionally vague because, by its terms, it can regulate First Amendment activity and does not provide sufficient specificity to inform citizens what conduct is prohibited. *See id.* The regulation provides: "Persons in and on property must at

Page 6   Defendant's Motion to Dismiss

all times comply with official signs of a prohibitory, regulatory, or directory nature and with the lawful direction of Federal police officers and other authorized individuals." 41 C.F.R. § 102-74.385 (2025). Two provisions of this regulation are vague and do not adequately provide standards for law enforcement to avoid arbitrary enforcement: (1) the provision requiring compliance with "lawful direction"; and (2) the provision requiring compliance with orders given by "other authorized individuals."

      First, the provision requiring compliance with "lawful direction" is unconstitutionally vague because it provides no guiding principles as to what renders a direction "lawful." It is unclear whether a direction is lawful due to the manner in which it is given or whether it is lawful in that its substance is supported by existing law. The trouble with the former reading is overwhelming lack of clarity. This lack of clarity is demonstrated in *United States v. Huizar*, where the court reversed a conviction under this regulation because the direction given was not constitutionally sufficient. 762 Fed.Appx. 391, 392 (9th Cir. 2019). There, the court explained that "basic principles of due process" required any "lawful direction" to contain "all, or many" of the following qualities: an unambiguous command, often given multiple times; officers ensured the command was adequately understood; officers explained that failing to comply with the order would result in arrest; and officers gave defendants a "reasonable opportunity to comply." *Id.* (collecting cases). Even with the Ninth Circuit's somewhat-limiting principle, it remains unclear to both officers and citizens what constitutes a "lawful direction." If the regulation instead suggests that a "lawful direction" is only lawful when it is substantively supported by existing law, again it does not provide sufficient notice to citizens or guiding principles to law enforcement. In *Smith*, the Court found a Massachusetts statute void for vagueness because it did not define "with substantial specificity what constitutes forbidden treatment of the flag." 415

Page 7   Defendant's Motion to Dismiss

U.S. at 581-82. There, it was important to the Court that American flags are common and come in many forms that change from generation to generation. Just like *Smith*, the regulation at issue here simply requires compliance with "lawful directions," notwithstanding the fact that the lawfulness of directions is subject to constantly changing standards found in statutes, regulations, and caselaw. For these same reasons, the second provision, requiring compliance with "authorized individuals," is unconstitutionally vague.

Although this District has addressed void-for-vagueness challenges to this and similar regulations, these cases focus primarily on only one aspect of the void-for-vagueness doctrine: notice to citizens. *See, e.g.*, *United States v. Cruscial*, 2019 WL 1087150, *4 (D. Or. Mar. 7, 2019); *United States v. Mumford*, 2017 WL 652449, *4 (D. Or. Feb. 16, 2017). However, an important aspect of this doctrine, especially when an offense purports to regulate potentially constitutionally protected First Amendment activity, is whether there is sufficient guidance to those enforcing the laws. *See Smith*, 415 U.S. at 573-74. Because this regulation fails to provide federal officers or other "authorized individuals" with any direction as to what makes an order "lawful," it gives too much discretion those enforcing this offense and implicates one main concern a void-for-vagueness challenge: arbitrary enforcement of the law. *See id.*; 41 C.F.R. § 102-74.385.

## CONCLUSION

For the foregoing reasons, Mr. Alexander respectfully requests that the Court dismiss the violations.

Dated: February 18, 2026.

| | |
|---|---|
| *s/ Peyton Lee* | */s/ Tatum Lohman* |
| Peyton Lee, OSB #164224 | Tatum Lohman, Law Clerk |

Page 8  Defendant's Motion to Dismiss