SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**ANDREW KARTCHNER, OSB #135784**
Assistant United States Attorney
Andrew.Kartchner@usdoj.gov
1000 SW Third Ave., Suite 600
Portland, OR  97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 3:26-cr-000430-YY[1] |
| v. | Citation Nos. E1210304 – OR 45<br>E1763477 – OR 45 |
| IAN ALEXANDER, | |
| Defendant. | GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |

## BACKGROUND

The Immigration and Customs Enforcement (ICE) occupies a building on South Macadam Avenue in Portland that has been the target of protests and demonstrations over the years. That building (hereinafter referred to as the "ICE Building") has sustained extensive damage from demonstrators in recent years. In the days and weeks leading up to the events at issue here, demonstrators at the ICE Building dealt damage to the vehicle entry gate in the driveway, the front entrance, the exterior video surveillance devices, and the exterior security

---

[1] Proceeded previously under 3:25-po-00391 and 3:25-po-00511

Government's Response                                                                                                    Page 1

post facility of the building. Demonstrators threw fireworks, rocks, and bottles at the building and defaced it with graffiti. Because of this, the Department of Homeland Security (DHS) assigned extra officers to protect the building and its occupants.

Late in the evening of June 17, 2025, Defendant, along with several dozen other people, was at the ICE Building in Portland Oregon, congregating just outside the gate on the driveway to protest the agency. Around 10:00 p.m. that night, DHS officers used a long-range acoustic device (LRAD) to direct protesters to clear the driveway of the building. Multiple such directions were given via the LRAD that evening, with the last coming at 10:49 p.m. Rather than obey the directions, the protesters created a "shield wall" in the driveway near the gate, blocking the gate while standing behind umbrellas, skateboards, and make-shift shields made of storage container lids and other materials. At approximately 10:50 p.m., officers began exiting the gate and verbally directing protesters to vacate the driveway or be subject to arrest. As the officers approached, some protesters fled the area entirely and others slowly backed away but remained on the driveway. DHS officers arrested nine protesters who refused to leave the driveway, including Defendant. Some of them, including Defendant, resisted by pulling away from officers as they attempted to effectuate the arrests. None of the protesters in the video of the incident appeared to be there in support of ICE or otherwise in opposition to Defendant's point of view. Defendant was cited and released the same night.

Defendant returned to the driveway of the ICE Building on July 16, 2025. Early that morning, around midnight, Defendant and a group of approximately ten protesters were congregated on the ICE Building's driveway. Another dozen or so protesters were also nearby carrying a Mexican flag and anti-ICE signs displaying slogans such as "HONK IF YOU HATE NAZIS" and "HONK IF YOU HATE FACISTS." None of the protesters in the video of the

**Response in Opposition to Defendant's Motion to Dismiss**                                                **Page 2**

incident appeared to be there in support of ICE or otherwise in opposition to Defendant's point of view. Between the hours of midnight and 12:15 a.m., DHS gave verbal and LRAD warnings directing protesters on the driveway to clear federal property. Defendant did not obey those warnings, instead staying on the driveway even as DHS officers exited the driveway gate and approached him to effectuate an arrest. Defendant was arrested after a small struggle and was cited and released that morning.

Based on these two incidents, Defendant has been charged with two counts of Failing to Obey a Lawful Direction under 41 C.F.R. § 102-74.385. On February 18, 2026, Defendant filed the present Motion to Dismiss.

## DISCUSSION

Federal Rule of Criminal Procedure 12(b)(1) allows a party to raise pretrial motions relating to any "defense, objection, or request that the court can determine without a trial on the merits." While a charging instrument may be dismissed if the statute was unconstitutionally applied, dismissal is an "extreme remedy" that requires more than "vague" allegations by the defendant. *United States v. Mayer*, 503 F.3d 740, 748, 749 (9th Cir. 2007).

Defendant claims that 41 C.F.R. § 102-74.385 was applied to him in violation of his First Amendment rights and that the regulation is void for vagueness. As explained below, both of these claims must fail.

**I.        DHS officers did not violate Defendant's First Amendment rights.**

Defendant's first argument is that he was cited and arrested on account of his constitutionally protected speech. Specifically, he claims that he was targeted for arrest and citation while others who refused to leave the driveway were "gently escorted off the property" and that officers arrested him because he had "express[ed] frustration" that his phone had been

seized. *Id.* at 5. It is unclear what doctrine Defendant is invoking, but the Ninth Circuit generally analyzes similar arguments as "selective enforcement" claims. *See Hoye v. City of Oakland*, 653 F.3d 835, 855 (9th Cir. 2011).[2]

To prevail on a selective enforcement claim, the movant must prove two elements. First, he must demonstrate that enforcement of the law against him had a "discriminatory effect." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 920 (9th Cir. 2012). To prove this, the movant must show that the law was applied in a "discriminatory manner or imposes different burdens on different classes of people." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) (Dec. 29, 1995). Put another way, the movant must show that someone of a different class could have been charged, but was not.[3] *Hightower v. City & Cnty. of San Francisco*, 77 F. Supp. 3d 867, 883 (N.D. Cal. 2014), *aff'd sub nom. Taub v. City & Cnty. of San Francisco*, 696 F. App'x 181 (9th Cir. 2017) (citing *Hoye v. City of Oakland*, 653 F.3d 835, 855 (9th Cir. 2011); *Rosenbaum v. City & Cnty. of San Francisco*, 484 F.3d 1142, 1153 (9th Cir. 2007)); *see also Lacey*, 693 F.3d at 920. The standard for proving discriminatory effect "is a demanding one." *Lacey*, 693 F.3d at 920.

Second, the movant must show that law enforcement was motivated by "a discriminatory purpose." *Lacey*, 693 F.3d at 920. To show discriminatory purpose, the movant must show police enforced the law against him "on the basis of an impermissible ground such as race, religion or exercise of…constitutional rights." *Id.* at 922. Discriminatory purpose requires more than simple

---

[2] To the extent that Defendant is raising a retaliatory arrest claim, that claim fails because Defendant has not alleged nor proved that probable cause did not exist to support the arrest. *Nieves v. Bartlett*, 587 U.S. 391, 404 (2019).

[3] The Ninth Circuit has held that while strict adherence to this requirement is not required to prevail on a discovery motion, "the defendant will eventually need to show both elements to prevail on the claim." *United States v. Sellers*, 906 F.3d 848, 856 (9th Cir. 2018).

**Response in Opposition to Defendant's Motion to Dismiss**                                              **Page 4**

"awareness of consequences"; it implies that the law enforcement took a particular course of action "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Wayte v. United States*, 470 U.S. 598, 610 (1985) (quoting *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979)).

Defendant here has failed to show discriminatory effect. He claims that he was targeted because of his speech, but he points to no one with a differing viewpoint who could have been charged for the same offense but was not. Indeed, in the videos of the incidents, all the civilians on or around the driveway appear to share Defendant's views about ICE. Some held anti-ICE signs, some made crude hand gestures toward the building, and some violently resisted officers as they approached the group to clear the driveway. None appeared to be there in support of ICE. Even if the scope of the inquiry were widened beyond the nights in question here, Defendant has pointed to *no* pro-ICE individuals who, at any time, refused to leave the ICE driveway and were not arrested. Without making even a small showing that someone espousing pro-ICE—or even ICE-neutral—views was not charged for the same conduct, Defendant cannot meet his "demanding" burden to show discriminatory effect.

Defendant has also failed to show discriminatory purpose. Defendant has pointed to no statements or actions by the officers indicating they were targeting him because of his speech. Indeed, the only actions of the officers Defendant even mentions are (1) the fact that others were "gently escorted"[4] off the premises while Defendant was cited and arrested, and (2) that he had expressed frustration that his phone had been seized. ECF 25 at 5. Neither of these facts, even if true, tend to prove that the officers arrested Defendant *on account of* his constitutionally

---

[4] Presumably Defendant is referring to one protester during the first incident who, being in a wheelchair, was escorted off the driveway.

**Response in Opposition to Defendant's Motion to Dismiss**                              Page 5

protected speech. That the officers were not able to, or chose not to, chase down and arrest every one of the protesters who refused to clear the driveway sheds no light on the officer's intent vis-à-vis Defendant's viewpoint, especially since the protesters who were allegedly "gently escorted" almost certainly agreed with Defendant's speech. And simply pointing to his own hostility toward ICE does nothing to show that such hostility was the *cause* of Defendant's arrest. In short, Defendant has proffered no evidence showing that the arresting officers had a discriminatory purpose in arresting him.

Because Defendant has made no showing that his arrest had a discriminatory effect or purpose, Defendant's selective enforcement claim under the First Amendment must fail.

## II.     41 C.F.R. § 102-74.385 is not void for vagueness.

Defendant next argues that the term "lawful direction" is unconstitutionally vague because "it does not provide sufficient notice to citizens or guiding principles to law enforcement" and "the lawfulness of directions is subject to constantly changing standards found in statutes, regulations, and caselaw." ECF 25 at 7, 8.[5]

In determining whether a statute is unconstitutionally vague, courts "must determine whether a person of average intelligence would reasonably understand that the charged conduct is proscribed." *United States v. Williams*, 441 F.3d 716, 724 (9th Cir. 2006). The inquiry is whether the law is written with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "[W]here a defendant's conduct demonstrates that he was on notice that the conduct was proscribed by a statute, …the person's

---

[5] Defendant also mentions that the term "other authorized individuals" is void for vagueness but offers no explanation as to why. ECF 25 at 7. In any event, Defendant does not allege that he was ordered to clear the driveway by anyone other than federal police officers.

**Response in Opposition to Defendant's Motion to Dismiss**                                          **Page 6**

conduct will defeat, or contribute to the defeat of, an as-applied challenge." *United States v. Parker*, 761 F.3d 986, 992 (9th Cir. 2014)

Applying these principles, court after court has held that 41 C.F.R. § 102-74.385 and similar laws are not void for vagueness. *United States v. Stansell*, 847 F.2d 609, 616 (9th Cir. 1988); *United States v. Brice*, 926 F.2d 925, 930 (9th Cir. 1991); *United States v. Sachs*, 679 F.2d 1015, 1018 (1st Cir. 1982); *United States v. Shiel*, 611 F.2d 526, 528 (4th Cir. 1979); *United States v. Cruscial*, No. 3:18-CR-00465-JR, 2019 WL 1087150, at *4 (D. Or. Mar. 7, 2019). In *Stansell*, the Ninth Circuit held that the precursor to 41 CFR § 102-74.385, which is nearly identical to the current version, is not void for vagueness because it "identifies with sufficient definitiveness what a person must do, what type of orders and directions they must obey, and a fair warning of the types of conduct that is prohibited." *Stansell*, 847 F.2d at 616. Similarly, in *Cruscial*, Judge Russo held that the very regulation at issue here, applied in circumstances nearly identical to the present case, is not void for vagueness. *Cruscial*, 2019 WL 1087150, at *4.

There is no reason to treat the regulation here any differently than in those cases. A person of ordinary intelligence would have no problem understanding what it means to "comply with… the lawful direction of Federal police officers and other authorized individuals." 41 C.F.R. § 102-74.385. Nor would a person of ordinary intelligence have trouble understanding that refusing orders from law enforcement officers to vacate the driveway of a law enforcement building violates the regulation. This is especially true in relation to the second incident here, because, having been arrested and cited once already, Defendant indisputably knew that refusing to leave the driveway violated the regulation. *Parker*, 761 F.3d at 992. Indeed, in the video of the second incident, Defendant could be seen taunting the officers as they approached, daring them

to arrest him for what he obviously knew was a violation of the statute. And even during the first incident, there is no evidence Defendant's failure to comply was because he was confused about what the regulation required. On the contrary, that many in the crowd held make-shift shields and stood together in a wall to block the gate shows they were readying themselves for confrontation with officers. Defendant cannot now claim that he did not, or could not, know that the regulation prohibited disobeying orders to leave the driveway. The regulation is not void for vagueness, either facially or as applied.

Defendant cites two cases in support of his opposite conclusion. First, Defendant cites an unpublished Ninth Circuit opinion, *United States v. Huizar*, 762 Fed. Appx. 391, 392 (9th Cir. 2019). But the court in that case did not rule that the statute was void for vagueness; it ruled that the evidence was not sufficient to support a conviction because the direction given by law enforcement was "not clear" and "not repeated to ensure it was understood." *Id.* at 392. In any event, the facts in *Huizar* are not analogous to the facts here. Law enforcement here, unlike in *Huizar*, gave multiple clear directions for Defendant to clear the driveway.

Defendant next relies on *Smith v. Goguen*, 415 U.S. 566, 573 (1974), a case in which the Supreme Court held that a statute making it a crime to "treat contemptuously" the American flag was void for vagueness. The Court in *Smith* noted that the statute's formulation was unconstitutionally vague because there was no "ascertainable standard for inclusion and exclusion," leaving "police, court, and jury…free to react to nothing more than their own preferences for treatment of the flag." *Id.* at 578. The Court noted that because what constitutes proper treatment of the flag "takes so many forms, changing from one generation to another," a legislature should "define with some care the flag behavior it intends to outlaw." *Id.* at 581. Latching onto this language, Defendant argues that he could not be expected to understand what

**Response in Opposition to Defendant's Motion to Dismiss**                                   **Page 8**

a "lawful direction" is because the law is "constantly changing." ECF 25 at 8. This conclusion is misplaced. A person of ordinary intelligence has at least a general awareness of the law and thus would not be confused as to what it means to follow "lawful direction[s]." This term does not come close to the vagueness of the term "contemptuously" in the statute in *Smith*, nor does it open the door to arbitrary or discriminatory enforcement. On the contrary, this term is a limitation on, not an expansion of, law enforcement's power to issue commands on federal property. The flag treatment statute in *Smith* is nothing like the "lawful direction" regulation here.

In sum, courts, including judges in this District, have repeatedly held that 41 CFR § 102-74.385, its precursors, and similar laws are not void for vagueness. The Court here should follow suit.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny Defendant's Motion to Dismiss.

Dated: March 4, 2026                                Respectfully submitted,

                                            SCOTT E. BRADFORD
                                            United States Attorney

                                             */s/ Andrew Kartchner*
                                            ANDREW KARTCHNER, OSB # 135784
                                            Assistant United States Attorney