UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

IAN ALEXANDER,

        Defendant.

Case Nos. 3:25-po-00391-YY,
3:25-po-00511-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Defendant Ian Alexander faces two class C misdemeanor charges related to protests outside the U.S. Immigration and Customs Enforcement facility ("ICE facility") in Portland, Oregon. On June 17, 2025, plaintiff allegedly refused to leave the ICE facility property after receiving multiple orders to do so. No. 3:25-po-00391-YY, ECF 1-2. A month later, plaintiff allegedly remained on federal property in front of the ICE building after receiving multiple warnings to leave. No. 3:25-po-00511-YY, ECF 1-2. In both instances, defendant has been charged with failure to comply with the lawful direction of a federal police officer or other authorized individual in violation of 41 C.F.R. § 102-74.385. Defendant has filed motions for jury trial, ECF 24 (3:25-po-00391-YY), ECF 22 (3:25-po-00511-YY), which are denied for the reasons explained below.[1]

---

[1] Defendant has two pending cases: No. 3:25-PO-00391-YY and No. 3:25-PO-00511-YY. Defendant has filed identical motions for a jury trial in both cases. For ease of reference, citations in this order refer to filings in the first case, No. 3:25-PO-00391-YY.

1 – OPINION AND ORDER

The Sixth Amendment reserves the right to a jury trial "for prosecutions of serious offenses[.]" *United States v. Wallen*, 874 F.3d 620, 625 (9th Cir. 2017) (internal citation omitted). In determining whether an offense is serious, courts primarily consider the maximum penalty attached to the offense. *Id.* "Any crime punishable by a prison sentence of more than six months is serious, triggering the Sixth Amendment right to trial by jury." *United States v. Clavette*, 135 F.3d 1308, 1309 (9th Cir. 1998). Alternatively, "[a]ny offense punishable by a prison term of six months or less is presumed to be petty." *Id.* "The maximum period of incarceration is not the only relevant form of punishment, but it is the most important." *United States v. Stanfill El*, 714 F.3d 1150, 1152 (9th Cir. 2013).

A defendant can overcome a petty offense presumption "only when the additional authorized penalties are so severe that they clearly reflect a legislative determination that the offense in question is a serious one." *Id.* at 1152-53 (quotation cleaned up). "In performing this analysis, only penalties resulting from state action, *e.g.*, those mandated by statute or regulation, should be considered." *Blanton v. City of N. Las Vegas, Nev.*, 489 U.S. 538, 543 n.8 (1989). Additional punishment may be sufficiently severe to overcome the presumption where it involves the "imposition of a very large fine, or a very long period of probation, or the forfeiture of substantial property[.]" *United States v. Ballek*, 170 F.3d 871, 876 (9th Cir. 1999).

Here, defendant is charged with violating 41 C.F.R. § 102-74.385. Individuals found guilty under this regulation "shall be fined under title 18 of the United States Code, imprisoned for not more than 30 days, or both." 41 C.F.R. § 102-74.450. In *United States v. Stansell,* 847 F.2d 609, 611–12 (9th Cir. 1988), the defendants were similarly charged with violating 41 C.F.R. § 101–20.304, the predecessor statute to 41 C.F.R. § 102-74.385.[2] The Ninth Circuit held that,

---

[2] Like 41 C.F.R. § 102-74.385, 41 C.F.R. § 102-74.450 states:

where the punishment for such an offense "falls far below the standards for a serious offense, the defense is properly deemed petty," and the defendants were not entitled to a jury trial. *Id.* at 612. The court further observed that "[i]t has been a common practice to have bench trials for cases under section 101-20.304, even when the first amendment is undoubtedly implicated." *Id.* at 612 n.3 (collecting cases); *see also United States v. Pearl,* 3:25-cr-00280-JR, 2026 WL 353358, at *3 (D. Or. Feb. 9, 2026) (holding the defendant was not entitled to jury trial for violating 41 C.F.R. § 102-74.385 "[i]n the absence of lengthy probation periods, excessive fines or forfeiture of substantial property" and where the "defendant fails to show extenuating circumstances that would trigger a jury trial"); *United States v. Cruscial*, 3:18-cr-00465-JR, 2019 WL 1087150, at *7 (D. Or. Mar. 7, 2019) (same).

Defendant argues that a violation of 41 C.F.R. § 102-74.385 is sufficiently serious to warrant a jury trial because the "offense charged was drafted by the executive, rather than the legislature." Mot. Jury Trial 9, ECF 24. Defendant also observes that the current "executive considers the offense serious" by characterizing the "protesters at the ICE facility are serious criminals" and the protests as "a form of rebellion." *Id.* at 10.

Defendant's argument is unavailing because, despite whatever rhetoric the executive branch has used to characterize protest activity at the ICE facility, it is Congress, not the executive branch, that established the penalties for this offense. The regulation at issue was promulgated pursuant to 40 U.S.C. § 1315, in which Congress delegated authority to the

---

Persons in and on property shall at all times comply with official signs of a prohibitory, regulatory, or directory nature and with the direction of Federal protective officers and other authorized individuals.

*Stansell*, 847 F.2d at 612.

3 – OPINION AND ORDER

Secretary of Homeland Security to promulgate regulations in consultation with the General Services Administration ("GSA"). *United States v. Moriello*, 980 F.3d 924, 932 (4th Cir. 2020). While Congress delegated regulatory authority, it limited GSA's power by specifying "that the rules must be 'for the protection and administration of property owned or occupied by the Federal Government and persons on the property.'" *Id.* at 933 (quoting 40 U.S.C. § 1315(c)). Congress also limited the penalty to "reasonable penalties" of "'not more than 30 days' in prison and fines in the amounts allowed by Title 18." *Id.* at 932. These specific limitations show that the legislature did not intend for a violation of this regulation to constitute a serious offense.

Defendant also contends that the executive branch has imposed an additional penalty on this offense through the "looming threat of a 'domestic terrorist' designation." Reply 3, ECF 29. Defendant argues that this designation may then lead to him being investigated as a domestic terrorist and placed on an FBI watchlist, which could have lifelong implications. *Id.*; Mot. Jury Trial 11, ECF 24. But the fact is that defendant is not being charged as a domestic terrorist.[3] He is being charged for failing to obey the lawful directions of federal law enforcement officers. His concerns are merely speculative, and the regulation at issue does not impose any additional penalties that would support such concerns.

Defendant's reliance on *Fallen v. United States*, 290 A.3d 486 (D.C. 2023), and *Bado v. United States*, 186 A.3d 1243 (D.C. 2018), is also unpersuasive. Reply 3, ECF 29. In both cases, the defendants were charged with misdemeanor sexual abuse of a minor. In *Fallen*, the court held that the statutory requirements under the Sex Offender Registration Act, which included ten

---

[3] Defendant cites to multiple statutes related to terrorism, including 6 U.S.C. § 124h-1 (threat information sharing within the Department of Homeland Security); 6 U.S.C. § 1137a (law enforcement training related to terrorism); and 18 U.S.C. § 2331(5) (defining "domestic terrorism"). Reply 3, ECF 29. However, defendant is not charged under any of these statutes.

4 – OPINION AND ORDER

years of sex offender registration and community notification, constituted a "severe penalty" and "powerful evidence that the legislature views misdemeanor child sexual abuse as a serious offense," thus "triggering the right to a jury trial." 290 A.3d at 489, 499. In *Bado*, where the defendant was a noncitizen, the court held that the "penalty of deportation" was "comparable to a prison sentence of more than six months," thus entitling the defendant to a jury trial. 186 A.3d at 1257. In both cases, the courts emphasized that statutory penalties reflected the legislature's determination that the offenses were serious. *Fallen*, 290 A.3d at 499; *Bado*, 186 A.3d at 1258. Here, plaintiff's contention that he will be penalized by being designated a domestic terrorist is not analogous because it is neither mandated by statute nor an actual penalty flowing from a conviction under 41 C.F.R. § 102-74.385.

Alternatively, defendant urges the court to exercise its discretion to grant a jury trial. There is little case law to guide the court's discretion in ordering a jury trial for a petty offense. In *Cruscial*, the defendants faced similar charges arising from protest activities at the ICE facility in 2019. The defendants argued that their case presented a "matter of public interest," which was "[t]he overarching factor" and "central to the Court's decision." 2019 WL 1087150 at *6. They also argued that their First Amendment rights weighed in favor of a jury trial. *Id.* In ruling on the motion, the court recognized that caselaw "indicate[s] a jury trial for a petty offense may be appropriate under highly unusual or unique circumstances." *Id.* at *6. However, the court declined to exercise its discretion to order a jury trial, noting the defendants "have not shown that the facts of this case warrant divergence from the general rule providing for bench trials of petty offenses." *Id.* at *7. The court observed that federal misdemeanor charges against protestors were "common," "no novel questions" had been presented, and the defendants were prosecuted by information, not indictment, i.e., there was nothing unusual about how the charges were brought

5 – OPINION AND ORDER

against them. *Id*. Also, the court found that "permitting a jury trial for a petty offense predominately based on the likelihood of local media attention is neither practicable nor consistent with notions of fundamental fairness." *Id.* Similarly, in *United States v. Mumford*, 3:17-cr-00008-JCC, 2017 WL 652449, *3-4 (D. Or. Feb 16, 2017), the court declined to exercise its discretion to order a jury trial where the defendant argued that the case was in the public eye, prosecuted out of vindictiveness, and unusual in that it involved the prosecution of a defense attorney who was "tackled, taken down, and tazed in the midst of his making an argument to a federal judge on his client's behalf." *Id.* at **3-4; *see also id.,* Opp Govt's Mot. Bench Trial, ECF 14.

In less than a handful of written decisions, judges in other jurisdictions have exercised their discretion to order a jury trial. In *United States v. Greenpeace, Inc.*, 314 F. Supp. 2d 1252 (S.D. Fla. 2004), the government indicted Greenpeace for "boarding vessels before arrival" under 18 U.S.C. § 2279. The court found the circumstances warranted a jury trial because the case was "unusual" and "would benefit from a jury's collective decision-making." *Id*. at 1264. The court observed the defendant was charged with a criminal statute that had "been gathering dust for over a century," it was rare to pursue criminal charges against an advocacy organization for "conduct having to do with the exposition of the organization's message" (especially given a prior statement by a high-level Department of Justice official that it did not "go after [advocacy] groups" and instead prosecuted "people who commit criminal conduct"), and there were claims that the prosecution was politically motivated due to organization's criticism of the then-president's environmental policies. In sum, the court concluded this was not a "run-of-the-mill" misdemeanor case and more appropriate for a jury trial, given juries "better embody and represent the judgment of the community." *Id*.

6 – OPINION AND ORDER

In *United States v. Rodriguez*, No. 1:10-CR-120-MHW, 2010 WL 11531202, at *1 (D. Id. Oct. 15, 2010), the court found the case was not a "run-of-the mill petty offense of assault" where it was arose out of an officer-involved shooting in which the defendant was wounded and hospitalized and the driver of the car was killed by the officer. By contrast, in *United States v. Camas*, No. 24-CR-00513-PHK-1, 2025 WL 1207542, at *6 (N.D. Cal. Apr. 25, 2025), the court declined to exercise its discretion to order a jury trial where the defendant was charged with a "non-novel, unremarkable misdemeanor" driving under the influence of intoxicants offense.[4]

Defendant argues this case presents more than just "highly unusual or unique circumstances" or a "likelihood of local media attention." Mot. Jury Trial 12, ECF 24. Defendant argues that "[w]hen executive actions raise substantial fears about arbitrary enforcement of criminal law, a court should feel empowered to exercise its discretion to allow a trial by jury, thereby reaffirming community confidence in our justice system." Mot. Jury Trial 8, ECF 24. Defendant "urges the Court to recognize that this is a time when the voice of the community matters most," "[p]articularly in the District of Oregon where only months ago, the court held that the President had 'acted outside the scope of [his] constitutional authority conferred by Congress' when he federalized the Oregon National Guard to quell the very protests at issue in this case." *Id.* at 13. Defendant contends "[t]here are indications that those charged with enforcing the law are threatening core Constitutional protections." *Id.* He asserts "the circumstances here are manifestly different and concern for government outreach is heightened." He argues, "If there were ever a moment to engage robust protections for citizens being

---

[4] In *United States v. Beard*, 313 F. Supp. 844 (D. Minn. 1970), the court also exercised its discretion to allow a jury trial. The court recognized that such discretion included the court's "interest of the orderly administration of justice," and allowed a jury trial in a case involving 86 defendants but only if all defendants agreed not to assert individual defenses, i.e, they agreed to "stand or fall together." *Id*. at 846.

7 – OPINION AND ORDER

prosecuted for offenses arising from potentially constitutionally protected activity, it is now," and "[f]urther, if there were ever a moment to allow members of the community to weigh the credibility of government witnesses in executing the fact-finding function, it is now." *Id*. at 14.

Defendant's charges stem from incidents on June 12, 2025, and July 16, 2025, when it is alleged that he was given multiple orders to leave the ICE facility but refused to do so and was forcibly removed. The probable cause statement for the June 12, 2025 incident indicates that defendant "physically resisted by repeatedly pulling away" from the officer. There are no allegations that defendant resisted on July 16, 2025, and the probable cause statement indicates that defendant was released within less than two hours. There is nothing about these alleged facts, and defendant has not alleged any extenuating circumstances, to indicate these cases are anything other than run-of-the-mill prosecutions under 41 C.F.R. § 102-74.385. There have been political protests at the Portland ICE facility for many years, and the alleged incidents could have just as easily occurred in any other year. Because these incidents are run-of-the mill offenses that do not involve any unusual or unique circumstances, they do not warrant a jury trial.

Defendant points to *United States v. Griffin,* No. 3:25-cr-00474-AB-1, where the court recently exercised its discretion to grant a jury trial in a case arising from the ICE facility protests. In *Griffin*, the court noted the "unusual and unique circumstances" that are present today, and found "this case is not a run-of-the-mill prosecution in the context of the time in which we find ourselves, and especially in connection with activities at this particular government-run facility." The court observed that "much has changed" since *Cruscial* was decided [in 2019] and concluded the defendant's "case would benefit from the collective decisionmaking of a jury."

8 – OPINION AND ORDER

The circumstances in *Griffin* are distinguishable. Griffin is charged with offenses arising out of three incidents at the ICE facility in October and November of 2025. Griffin claims that on October 22, 2025, they were wearing an inflatable cat suit when federal officers identified them as a "known repeat offender" and initiated a "targeted takedown" of them down the street from the ICE facility, then carried them to the ICE facility to be searched, resulting in injuries, including a large gash on the back and abrasions to the wrist and elbow. *U.S. v. Griffin*, 3:25-cv-00474-AB, Mot. Dismiss 4, ECF 29.[5] On the second incident date, November 14, 2025, Griffin claims they were sitting on the public sidewalk, outside of the ICE facility, when 20 federal officers emerged and one of them sprayed Griffin in the face with what appears to be pepper spray. *Id.* at 5-6. Griffin claims officers then dragged them to the gate and walked them into the ICE facility, causing them to suffer injuries to the arm. *Id.* at 6. Finally, in the third incident on November 16, 2025, Griffin claims they were tackled from behind by officers and pushed face first into the ground, 30 officers surrounded them, and then they were wheeled, motionless, into the ICE facility and transported to a hospital to be assessed for head trauma. *Id.* at 7-8.

As defendant correctly observes, civil cases have been filed in this district challenging recent executive decisions made in relation to the ICE facility. The factual narrative described by Griffin directly relates to the preliminary injunction orders issued in *Dickinson v. Trump*, 3:25-cv-2170-SI, and *Reach Community Development v. U.S. Department of Homeland Security*, 3:25-cv-02257-AB. Although the Ninth Circuit has stayed those orders, these cases nevertheless provide a context for why a jury trial is appropriate in Griffin's cases.

---

[5] The Motion to Dismiss was filed after the court held a hearing on whether to conduct a bench trial or jury trial. Nevertheless, the information contained in the motion is helpful for purposes of analyzing when the court should exercise its discretion to order a jury trial.

In *Dickinson*, the court observed that evidence "unambiguously shows DHS officers spraying OC Spray directly into the faces of peaceful and nonviolent protestors engaged in, at most passive resistance and discharging tear gas and firing pepper-ball munitions into crowds of peaceful and nonviolent protestors." Opinion and Order 11, ECF 155. The court found that "[b]ased on the evidence received, Defendants have continued to fire less lethal munitions, tear gas, pepper balls, and flash bangs into protestor crowds without warning," and "[t]his is 'powerful evidence of the . . . ongoing, sustained pattern of conduct that resulted in numerous injuries to members of the press' and peaceful protestors," including some protestors who have been injured more than once. *Id.* at 18. The court observed the fact "that some protestors, like those who sat on the driveway at the Portland ICE Building, may have engaged in criminal or non-criminal violations will not insulate Defendant's actions from First Amendment liability." *Id*. at 21. The court held that the "failure to fully or immediately comply with an officers' orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force." *Id.* (quoting *Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012)).

In *Reach Community Development*, the court found that the "[d]efendants' use of chemical munitions in response to protests at the Portland ICE Facility over the past eight months shows a pattern of deliberate indifference." 3:25-cv-02257-AB, Opinion and Order (March 6, 2026) 40, ECF 75. The court observed that, "[o]n one hand, Defendants' use of force reports indeed document unlawful behavior of certain protesters immediately present at the Portland ICE Facility. . . . But the deployment of such copious amounts of chemical munitions is unjustified on the present record." *Id.* at 47.[6]

---

[6] Defendant cites *Dickinson* but does not cite *Reach Community Development*. Nevertheless, the *Reach Community Development* case helps to describe why certain activities at the ICE facility would be of greater public concern. Defendant also cites *State of Oregon v. Trump*, 3:25-cv-

The preliminary injunction orders in those cases found that federal officers at the ICE facility have engaged in a pattern of unlawful behavior that has affected not only the protestors but the surrounding community, and the unlawful behavior, e.g., using OC spray on peaceful protestors, is similar to what Griffin alleges happened to them. Thus, Griffin has a strong argument for why their cases involve issues of greater public concern that would "be best tried by the collective decision-making of the community." *Rodriguez*, 2010 WL 11531202 at \*1; *see also Greenpeace*, 314 F. Supp. 2d at 1264 (observing that "juries, because of their nature, better embody and represent the judgment of the community").

Defendant has asserted no particular facts about his case that warrant the court's exercise of its discretion to order a jury trial. There is no indication that federal agents used OC spray or chemical munitions against defendant or that he was otherwise injured or treated in a manner that would heighten public interest in this case. Instead, this appears to be a run-of-the-mill case alleging that defendant failed to comply with federal officers' directives to leave the ICE facility and his subsequent arrest for failing to do so. Again, the Ninth Circuit has observed that, historically, "[i]t has been a common practice to have bench trials for cases under" the identical predecessor statute to 41 C.F.R. § 102-74.385, "even when the first amendment is undoubtedly implicated." *Stansell*, 847 F.2d at 612 n.3. The cases that the court cited in support of this point illustrate that bench trials were routinely conducted during other times of significant political unrest and, even, war. *Id.* (citing *United States v. Bader,* 698 F.2d 553, 554 (1st. Cir. 1983) (involving post office sit-in protesting draft registration); *United States v. Shiel,* 611 F.2d 526,

---

01756-IM, in which "the court held that the President 'acted outside the scope of [his] constitutional authority conferred by Congress' when he federalized the Oregon National Guard to quell the very protests at issue in this case." Mot. Jury Trial 13, ECF 24. That case is of less importance here because the executive decision at issue was made in September of 2025, months after defendant's criminal conduct allegedly took place.

11 – OPINION AND ORDER

527 (4th Cir. 1979) (involving protest at Pentagon to oppose nuclear arms); *United States v. Sachs,* 679 F.2d 1015, 1017 (1st Cir. 1982) (involving violation of 41 C.F.R. §§ 101–20.304 and 101–20.305 for "unreasonably obstruct[ing] the usual use of . . . elevators" during an anti-draft demonstration in a post office/courthouse); *United States v. Rankin,* 616 F.2d 1168, 1169 (10th Cir. 1980) (involving violation of 42 C.F.R. 101–20.305, which prohibits conduct that "impedes or disrupts the performance of official duties by Government employees," for protesting nuclear generating station); *United States v. Cassiagnol,* 420 F.2d 868, 871 (4th Cir. 1970) (involving violation of 41 C.F.R. § 101–19.304, which prohibited "unwarranted loitering . . . or assembly" and "unseemly or disorderly conduct," during an anti-war demonstration at the Pentagon)).

In sum, there are no unusual or unique circumstances pertaining to the offenses for which defendant is charged or his arrests that warrant a jury trial to be ordered in the court's discretion. While defendant's offenses allegedly occurred during a backdrop of extraordinary events, as the government points out, his misdemeanor cases themselves involve "no extraordinary events." Resp. 7-8, ECF 28. In the absence of such circumstances, this court declines to exercise its discretion to extend the Sixth Amendment right to jury trial in defendant's cases.

## ORDER

Defendant's Motions for Jury Trial, ECF 24 (3:25-po-00391-YY), ECF 22 (3:25-po-00511-YY), are denied.

DATED May 1, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

12 – OPINION AND ORDER